IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONY S. BARNES, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 15-134 |
| | ) Judge Kim R. Gibson |
| v. | ) Chief Magistrate Judge Maureen P. Kelly |
| | ) |
| PAMELA WERTZ, PRIME CARE | ) |
| MEDICAL, INC., MARC T. MASUCCI, | ) |
| MICHAEL T. JOHNSON, OFFICER URISH, | ) |
| BLAIR COUNTY, BLAIR COUNTY | ) Re: ECF No. 45 |
| PRISON BOARD, JOHN DOES 1-3, and | ) |
| JANE DOE, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

Before the Court is a Motion to Dismiss filed by Defendant Marc T. Masucci ("Masucci"). ECF No. 45. For the reasons that follow, it is respectfully recommended that the Motion to Dismiss be granted without prejudice for Plaintiff to file an Amended Complaint as to particular claims.

**II.  REPORT**

    **A.  PROCEDURAL HISTORY**

Acting *pro* se, Plaintiff filed the operative Complaint on January 4, 2016. ECF No. 38. In the Complaint, Plaintiff makes the following pertinent allegations. Plaintiff was incarcerated at Blair County Prison ("BCP") during the relevant time period. Id. ¶ 4. Defendant Masucci is the Deputy Warden at BCP. Id. ¶ 8. He is in charge of daily operations and responsible for transportation with regard to prisoner medical visits. Id.

When Plaintiff was incarcerated at BCP in October of 2013, he was suffering from Grave's disease and a tuberculosis condition, both of which required medical treatment. Id. ¶¶ 18-19. In December 2013, Plaintiff began experiencing physical problems including pain behind his eyes, tremors, swelling and sweating. Id. ¶ 20. Plaintiff saw Defendant Pamela Wertz who told him he was "okay for the type of condition you have." Id. ¶ 24. She also told Plaintiff that the reason his prescribed medical treatment had been discontinued was that "we kept running out." Id. ¶ 26.

Plaintiff subsequently filed additional sick calls and grievances as his condition worsened. Id. ¶ 30. These requests for medical treatment were ignored. Id. ¶ 31. Plaintiff discovered that the grievance box he had been using was not functional. Id. ¶ 33. Plaintiff informed Defendant Masucci of the lack of response to his requests and about the box. Id. ¶ 33. Defendant Masucci instructed Plaintiff to hand deliver grievances to officers. Id. ¶ 34. Plaintiff followed that instruction, but still his requests were ignored. Id. ¶¶ 35-36. Plaintiff again notified Defendant Masucci of the ignored requests and Defendant Masucci stated he see what he could do about it. Id. ¶ 42. The problem continued. Id. ¶ 42.

On approximately April 6, 2014, Plaintiff and other inmates complained about rotten food and small portions of food served that day. Id. ¶ 57. As a result, Plaintiff was given a misconduct and sentenced to 90 days in the Restricted Housing Unit ("RHU"). Id. ¶ 58. During the disciplinary hearing, Defendant Masucci denied Plaintiff the ability to call witnesses and affirmed the misconduct finding. Id. ¶ 59.

Plaintiff wrote to the NAACP, the Blair County Commissioners and the Altoona Mirror, complaining about prison conditions. Id. ¶ 60. The Altoona Mirror published an article in

response to Plaintiff's complaints.  Id. ¶ 61.  Defendant Masucci began threatening Plaintiff and Plaintiff's cell mate, stating that if they continued to "make noise" about the situation, he would make their living conditions harsher than they already were.  Id. ¶ 62.

On approximately September 11, 2014, Plaintiff filed a request with Defendant Masucci complaining that he was not receiving the specialized diet he had been authorized to receive. Id. ¶ 72.  Defendant Masucci claimed that the issue had been rectified, but it was not.  Id.

In this Court, Plaintiff asserts claims against Defendant Masucci of: (1) deliberate indifference to a serious medical need; (2) retaliation; (3) denial of due process; (4) "policy and custom;" and (5) intentional infliction of emotional distress.  Id. at 12-14.  Plaintiff also seeks punitive damages against Defendant Masucci.  Id. ¶ 112.

On January 25, 2016, Defendant Masucci filed the instant Motion to Dismiss and Brief in Support thereof.  ECF Nos. 45-46.  On March 17, 2016, Plaintiff filed a Brief in Opposition. ECF No. 54.  On March 30, 2016, Defendant Masucci filed a Reply.  ECF No. 60.  The Motion to Dismiss is now ripe for review.

### B. STANDARD OF REVIEW

As the United States Supreme Court explained in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  In assessing the merits of a claim subject to a motion to dismiss, a court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party.  Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003)).  A pleading

party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)). The scope of review may extend to "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance.").

### C. DISCUSSION

#### 1. Legal Principles

##### a. Civil Rights

In order to succeed on a Section 1983 claim, a claimant must show: (1) the conduct complained of was performed by a person acting under color of state law; and (2) this conduct deprived the claimant of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993). Further, when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint unless it would be inequitable or futile to do so. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

b.     **Deliberate Indifference**

A refusal to provide medical care to a prisoner violates the Eighth Amendment's prohibition of "cruel and unusual punishment." U.S. CONST. amend. VIII. "Regardless of how evidenced," whether "manifested by prison doctors in their response to the prisoner's need or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 104–05 (1976). "The Estelle standard requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious." Spruill v. Gillis, 372 F.3d 218, 235-236 (3d Cir. 2004). The Estelle standard is met when: (1) a doctor is "intentionally inflicting pain on [a] prisoner," (2) "prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury," or (3) "knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care." Id. at 235. Further, if a prisoner is receiving medical treatment, a non-medical prison official must have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating)" the prisoner in order to be liable for deliberate indifference. Id. at 236.

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v.

Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

### c. Retaliation

To state a prima facie claim of retaliation under the First Amendment, Plaintiff must allege that (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. Rauser v. Horn, 241 F.3d 330, 333–34 (3d Cir. 2001).

### d. Due Process

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To establish a claim under the Due Process Clause, a plaintiff must show that he had a protected liberty or property interest of which he has been deprived, and that the process afforded him did not comport with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

The Due Process Clause of the Fourteenth Amendment does not create an inherent liberty interest to remain free from administrative segregation. Stephany v. Wagner, 835 F.2d 497, 499 (3d Cir. 1987). The United States Supreme Court has held that, in the state prison context, changes in conditions of an inmate's confinement can result in the deprivation of a constitutionally protected liberty interest only where the liberty interest involved is one of "real substance," or where the change results in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S.472 (1995) at 477, 484-487.

2. **Plaintiff's Claims**

   a. **Deliberate Indifference (Count II)**

At Count II, Plaintiff alleges a claim against, *inter alia*, Defendant Masucci for deliberate indifference to Plaintiff's serious medical needs. ECF No. 38 ¶¶ 95-96. Specifically, Plaintiff alleges that Defendant Masucci's "actions and inactions to intentionally deny, interfere and fail[] to remedy grievance redress and sick call procedures once notified" resulted in unreasonable delays in Plaintiff's access to treatment. Id. ¶ 96.

However, even accepting Plaintiff's allegations as true, Plaintiff has failed to advance sufficient facts to state a plausible claim that Defendant Masucci had the requisite knowledge and intent for a claim of deliberate indifference. The two incidents described in the Complaint which could constitute the bases for this claim are the two times Plaintiff informed Defendant Masucci that his sick calls were being ignored. Id. ¶¶ 33, 42.

As to the first time, Defendant Masucci responded to Plaintiff's complaint by advising Plaintiff to hand deliver his requests from that point forward. Id. ¶ 34. Defendant Masucci's response, which, on its face, is advice on how Plaintiff could obtain the relief he was seeking, cannot constitute deliberate indifference.

As to the second time, Defendant Masucci responded to Plaintiff's complaint by promising to "see what he could do about it." Id. ¶ 42. Aside from that non-indifferent response, it is important to note that Plaintiff communicated this complaint to Defendant Masucci as Defendant Masucci was escorting Plaintiff to medical treatment. Id. ¶ 41. Thus, even assuming that Defendant Masucci had knowledge, via Plaintiff's complaint to him, that Plaintiff's sick calls had been ignored, Defendant Masucci also knew that Plaintiff was currently receiving medical

treatment. Plaintiff does not allege that Defendant Masucci knew that the medical treatment he was receiving was flawed. Accordingly, Plaintiff has failed to advance a plausible claim for deliberate indifference on the part of Defendant Masucci. However, these deficiencies may be cured by amendment alleging the requisite facts. Accordingly, it is recommended that Count II be dismissed against Defendant Masucci without prejudice to file an Amended Complaint as to this claim.

### b. Retaliation (Count IV)

At Count IV, Plaintiff alleges a claim against, *inter alia*, Defendant Masucci for retaliation. Id. ¶¶ 99-101. Specifically, Plaintiff alleges that Defendant Masucci failed to "remedy problems of grievance redress or sick call procedures" in retaliation for Plaintiff's filing of grievances and complaining about prison conditions to the media. Id. ¶¶ 100-101.

Even accepting Plaintiff's allegations as true, Plaintiff has failed to advance sufficient facts to state a plausible claim that Defendant Masucci retaliated against Plaintiff. Plaintiff does not allege that he filed a grievance against Defendant Masucci. Plaintiff further does not allege that the failures he attributes to Defendant Masucci occurred subsequent to Plaintiff's complaints to the media. Plaintiff alleges that the complaints to the media took place after April 6, 2014. Id. ¶¶ 57, 60. However, Plaintiff alleges that he notified Defendant Masucci of the grievance/sick call problems in March of 2014 and before. Id. ¶¶ 33, 42. Defendant Masucci's action in March 2014 could not have been in retaliation for Plaintiff's action in April 2014. Accordingly, Plaintiff's retaliation claim, as alleged, is not plausible. However, it is not clear that amendment of this claim would be futile. Accordingly, it is recommended that Count

IV be dismissed against Defendant Masucci without prejudice to file an Amended Complaint as to this claim, including more specific facts as referenced above.

### c. Denial of Due Process (Count V)

At Count V, Plaintiff alleges a claim against Defendant Masucci for denial of due process. Id. ¶¶ 102-103. Specifically, Plaintiff alleges that, at Plaintiff's disciplinary hearing, Defendant Masucci refused to call witnesses requested by Plaintiff and found Plaintiff guilty without evidence to support the charge. Id. ¶ 103.

Even accepting those allegations as true, Plaintiff does not state a claim for violation of his due process rights because his 30-day confinement in the RHU is not an atypical, significant deprivation creating a liberty interest. See Muhammad v. Sec'y Pa. Dep't of Corr., 621 Fed. App'x 725, 728 (3d Cir. 2015) (finding a claim that prisoner was held in RHU for 30 days when not guilty of misconduct did not constitute violation of due process rights because discipline in segregated confinement did not create a liberty interest).

It would be futile to amend this claim. Accordingly, it is recommended that Count V be dismissed.

### d. Policy and Custom (Count VI)

At Count VI, Plaintiff alleges a claim against, *inter alia*, Defendant Masucci entitled "Policy and Custom." ECF No. 38 ¶¶ 104-105. Therein, Plaintiff alleges that the Defendants "exhibited a pattern of failures i.e., course of conduct, by either express policy or the inactions of its policy makers, had a policy and/or custom/practice of depriving detainees medical treatment, calculated retaliation, failure to remedy grievance redress and sick call procedures and due process violations." Id. ¶ 105.

9

Defendant Masucci asserts that this claim is "too vague and conclusory to allow a reasonable inference of a deficient policy or custom under the circumstances of this case or that Defendant Masucci is the policymaker." ECF No. 46 at 7. The Court agrees. However, it is not clear that amendment of this claim would be futile. Accordingly, it is recommended that Count VI be dismissed against Defendant Masucci without prejudice to file an Amended Complaint as to this claim, including more precise facts.

e. **Intentional Infliction of Emotional Distress (Count VII)**

Plaintiff's sole remaining claim against Defendant Masucci is a Pennsylvania state law claim of intentional infliction of emotional distress. ECF No. 38 ¶¶ 106-107.

Where all claims over which the Court has original jurisdiction have been dismissed, the district court may decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). Although declining to exercise jurisdiction is within the discretion of the district court, the United States Court of Appeals for the Third Circuit has held that, absent extraordinary circumstances, "pendent jurisdiction should be declined where the federal claims are no longer viable." Shaffer v. Bd. of Sch. Dir. Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984) (citations omitted).

At this juncture, Plaintiff's federal claims have been found nonviable and no extraordinary circumstances warrant the exercise of supplemental jurisdiction over Plaintiff's state law claim. Accordingly, it is recommended that this claim be dismissed without prejudice. If Plaintiff files an Amended Complaint, amending the federal claims identified herein, he may refile claim as well.

### f. Punitive Damages

Plaintiff indicates that he seeks punitive damages against, *inter alia*, Defendant Masucci. ECF No. 38 ¶ 112. Defendant Masucci argues that he cannot be held liable under Section 1983 in his official capacity. ECF No. 46 at 10.

At this juncture, no claims against Defendant Masucci survive, so his liability is not an issue. Nonetheless, the Court finds that Defendant Masucci is correct, punitive damages are not available against him in his official capacity. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) However, punitive damages may be available in his individual capacity.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant Masucci's Motion to Dismiss, ECF No. 45, be granted. However, it is further recommended that the dismissal be without prejudice as to Counts II, IV, VI and VII and that Plaintiff be permitted to file an Amended Complaint on these counts to specifically address the deficiencies identified herein.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187,

193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: August 12, 2016

cc: The Honorable Kim R. Gibson
United States District Judge

Tony S. Barnes
LT-2008
SCI Smithfield
P.O. Box 999
1120 Pike Street
Huntingdon, PA 16652

All counsel of record via CM-ECF